UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**RHONDA FLAGLER, et al.,**

Plaintiffs,

**v.**                                                    **CIVIL CASE NO.:  90-878-orl-19**

**THE HOUSING AUTHORITY OF THE**
**CITY OF SANFORD, FLORIDA, et al.,**

Defendants.

_____/

## PLAINTIFFS/INTERVENORS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

COMES NOW Plaintiff/Intervenor Michael Burke, by and through the

undersigned attorneys, on behalf of the members of the certified class described in the

Consent Decree that settled and resolved Case No. 90-878-orl-19, and moves for entry of

Summary Judgment pursuant to the provisions of Fed. R. Civ. P. 56 and, in support

thereof, submits the following:

### SYNOPSYS

The Housing Authority of the City of Sanford (hereinafter "SHA") instructed

Harry's Towing to remove Plaintiff/Intervenor Michael Burke's (hereinafter Mr. Burke

and/or Plaintiff) vehicle from a SHA's housing complex. The SHA's negligent and

wrongful act of ordering the towing and storage of the Plaintiff's vehicle violated the

procedures established by the SHA Towing Policy adopted under the Consent Decree that

settled and resolved Case No. 90-878-orl-19. In addition, Harry's Towing unlawfully

refused to release Mr. Burke's personal property from the vehicle in violation of Fla. Stat.

§ 713.78(10). Therefore, and firstly, the SHA is liable for the damages caused by the

1

negligent towing and storage of the vehicle under Fla. Stat. § 713.78(5)(c), which include the loss of both the Plaintiff's vehicle and personal property.  Secondly, the Defendant is also legally responsible for the Plaintiff's vehicle and personal property conversion, since the SHA wrongfully exercised and/or assumed authority over Mr. Burke's belongings and permanently deprived him of the possession.

Conversely, the SHA contends that Harry's Towing acted independently; that compensation is owed to the Plaintiff by the SHA for the vehicle only and not for his personal property; and that if deemed a SHA's agent, Harry's Towing acted outside the scope of the agency.

In response to the Defendant's contentions, and since the SHA had no authority to order the towing of Mr. Burke's vehicle under the Consent Decree, the Plaintiff requests an entry of summary judgment in its favor for compensation of both the vehicle and its contents, based on: (I) the agency relationship between the SHA and Harry's Towing (common law negligence); (II) the SHA's statutory negligence; and (III) the common law conversion/trespass to chattel[1].

## SUMMARY OF THE RELEVANT FACTS

On March 6, 2007, Plaintiff owned a 1985 Oldsmobile bearing VIN 1G3BY69Y7FY364133, which was parked at his mother's apartment at 49 William Clark Court, Sanford, Florida.  See, Supplemental Affidavit of Michael Burke, attached hereto as Exhibit 1, ¶ 1 (hereinafter referred to as "Ex 1, ¶ ___, attach. _____.").  Because he was in the process of moving from his girlfriend's apartment, Mr. Burke was storing a lot of

---

[1] *Sweeney v. Bruckner Plaza Assocs.*, LP, 20 A.D.3d 371 (N.Y. App. Div. 2005) (Because defendants failed to establish that they had the authority to remove plaintiff's vehicle, there existed triable issues as to whether their acts constituted conversion and/or trespass to chattel. Given the possible breach of the cited Administrative Code provision, plaintiff similarly raised issues of fact as to whether defendants were negligent.)

personal possessions inside his car. See, Ex. 1, ¶ 2. Mr. Burke was planning to get himself a new place. See, Ex. 1, ¶ 2. Conversely, Mr. Burke's personal possessions were lost when his car was towed by Harry's Towing on March 6, 2007. As a result, Plaintiff suffered a loss of $600.00 for the vehicle, $23,590.00 for the contents of the vehicle, and $1,282.80 for an invoice issued by Harry's Towing. See, Ex. 1, ¶ 2. Also see, Affidavit of Tremell Noble, attached hereto as Exhibit 2.

SHA's towing of Plaintiff's car caused Mr. Burke a lot of frustration and anger, since he has been without a car for months. Mr. Burke never received any notice from SHA or anyone else telling him that his car was in danger of being towed before March 6, 2007. He did not know why SHA directed that his car be towed. Mr. Burke was never given any opportunity by SHA to find out how to ask for a hearing to dispute why the SHA wanted to tow the car. See, Ex. 1, ¶ 5.

The tow was carried out at the direction of SHA's Senior Housing Manager, Ray Cornell and no prior notice was provided to Mr. Burke. Mr. Burke is the son of resident Patricia Burke, a duly-authorized guest of his mother and a class member whose due process rights were violated by the SHA. In the SHA letter of May 14, 2007, the SHA Executive Director, Mr. Angel I. Tua, admitted that Mr. Cornell did authorize the towing company to have Mr. Burke's vehicle towed in reliance on what he describes as the SHA "Parking Policy" and City of Sanford ordinance LDR Schedule F, § 5.0. See SHA Letter of May 14, 2007 by Angel I. Tua, attached hereto as Exhibit 3. The SHA Parking policy which Mr. Tua provided was not in compliance with the Revised SHA Towing Policy adopted by the Consent Decree.[2] In any case, Mr. Cornell contacted Harry's Towing and

---

[2] See Docket 38 (ORDER approving [32-1] joint motion for preliminary approval of the consent decree of settlement; any party to this action may apply to the Court for further orders as may be

3

gave them the authority to tow Mr. Burke's vehicle.

Plaintiff received a Notice of Claim of Lien dated March 20, 2007, from Harry's Towing Service, Inc., saying he could reclaim the car by paying $125 for towing and storage plus $45 administrative fee (total $170) or the car would be sold at public auction on April 13, 2007 at 10:00 a.m. in 655 West Fulton Street, Sanford, Florida. See, Ex. 1 ¶ 5; also see Pacific Creditor's Association Collection Letter, attachment hereto as Exhibit 4; and Harry's Towing Notice of Lien, attachment hereto as Exhibit 5.

Before April 13, 2007, Mr. Burke went to Harry's Towing Service, Inc. and was told by a female he believes to be Stephanie Harris that he had to pay $747.80 to get the car back. See, Ex. 1 ¶ 6. The car was not in evidence nor was he provided any inventory of the items in his car. See, Ex. 1 ¶ 7. In his presence, Stephanie Harris telephoned her boss and then told Mr. Burke that if he would pay $100 and sign his title over to them, he could get his belongings out of the car. See, Ex. 1 ¶ 8. Mr. Burke did not want to sign his title over. See, Ex. 1 ¶ 9.

In conclusion, the vehicle was sold and Mr. Burke lost his personal property in the process. Therefore, Mr. Burke has suffered damages in the amount of $25,522.80 for the loss of his vehicle, personal property and towing invoice. See, Ex. 1, ¶ 2.

In retort, Mr. Burke assigns liability for his loss to the SHA, but the SHA accepts responsibility for the vehicle only and not for the personal property.

## MEMORANDUM OF LAW

The SHA does not think it is responsible for the loss of the personal property in

---

necessary or appropriate for the implementation or enforcement of the consent decree (Signed by Judge Patricia C. Fawsett ) MFR Number 76/1740 (bsl) (Entered: 01/16/1992)); also see the Consent Decree at Docket 48 (RESPONSE re 43 MOTION to reopen Case, 45 MOTION for issuance of order to show cause, 44 MOTION to intervene filed by Housing Authority of City of Sanford, Fla.. (Attachments: # 1 Consent Decree)(Lister, Cheryl) (Entered: 08/31/2007)).

4

Mr. Burke's car by denying an agency relationship with Harry's Towing. In brief, the
SHA rejects liability by claiming that the towing company is a mere independent
contractor.

In support of this claim, and first, the SHA argues that the existence of an agency
turns, in some cases exclusively, on control. Here, the SHA assumes that Harry's
Towing had exclusive control over the towing and storage of the vehicles, that there was
no written contract to establish the agency relationship, and thus, that the service was
performed independently. Second, the SHA argues that if an agency was ever created,
Harry's Towing unlawful refusal to release Mr. Burke's personal property from his
vehicle discharged the Housing Authority from liability.

I. Agency relationship between the SHA and Harry's Towing

a. *Agency as a matter of fact*

Nonetheless, and first of all, the SHA's legal analysis is flawed because it fails to
address the fact that Harry's Towing acted under the direction of SHA's Senior Housing
Manager, Ray Cornell. See, Ex. 3; also see *Proebstl v. Club Apt.*, 1981 Ohio App.
LEXIS 11030 (Ohio Ct. App. 1981)[3]. Therefore, Defendant cannot reject responsibility
for the towing damages to the Plaintiff based on the alleged independent contractor's
acts, because the SHA admits to knowingly issuing the order to remove the vehicle. See

---

[3] *Proebstl v. Club Apt.*, 1981 Ohio App. LEXIS 11030 (Ohio Ct. App. 1981) (Plaintiff contends
that the trial court erred by not finding The Club Apartments to be jointly liable for conversion.
There is simply no evidence, however, that the actions of Bill Gates Custom Towing, Inc. in
disposing of the vehicles were under the direction or on behalf of The Club Apartments.
Moreover, it is emphasized that plaintiff had readily sufficient opportunity to present evidence
concerning damages for the acts of conversion committed by Bill Gates Custom Towing, Inc.
Therefore, the trial court's finding that only Bill Gates Custom Towing, Inc. was liable for
conversion, was proper.)

*Currie v. Sechrist*, 119 Ariz. 466 (Ariz. Ct. App. 1978).[4]  Conversely, there is

circumstantial evidence showing that Harry's Towing was more than an independent

contract, i.e. an agent.

The law of agency provides that a principal is bound by the acts of his agent.

There are two species of agent's authority; actual, either express or implied, and apparent.

An express agency is an actual agency created as a result of the oral or written agreement

of the parties, and an implied agency is also an actual agency, the existence of which as a

fact is proved by deductions or inferences from the other facts and circumstances of the

particular case, including the words and conduct of the parties. *See* Restatement (Second)

of Agency §§ 7-8 (1958); 3 Am.Jur.2d Agency §§ 18-19 (1962); 2 C.J.S. Agency §§ 91 c.

(2), 96 (1936).[5] More to the point, a towing company removing wrecked and abandoned

automobiles from public streets and property is clearly performing what is essentially a

governmental function, and therefore, is considered an agent of the government. See *Fox

v. News-Press Pub. Co.*, 545 So. 2d 941, 943 (Fla. 2nd DCA 1989).[6]  Likewise, in

Florida, the question of agency is one of fact to be determined by the trier of fact.  See

---

[4] *Currie v. Sechrist*, 119 Ariz. 466 (Ariz. Ct. App. 1978).  (The court held that: (1) even assuming
the towing company was liable, the record showed that the towing company was acting as an
independent contractor and that the shopping center could not be held liable for the towing
company's acts; and (2) the shopping center did not know about the incident in the parking lot and
could not be liable for conversion if one occurred.)

[5] "An express agency is an actual agency created as a result of the oral or written agreement of
the parties, and an implied agency is also an actual agency, the existence of which as a fact is
proved by deductions or inferences from the other facts and circumstances of the particular case,
including the words and conduct of the parties." 3 Am.Jur.2d Agency § 18 (1962).

[6] *Fox v. News-Press Pub. Co.*, 545 So. 2d 941, 943 (Fla. 2nd DCA 1989), at 943 ("This [towing]
governmental duty was engendered by the various statutes directing law enforcement officers to
remove abandoned or wrecked vehicles or other personal property from public streets and
property. *See* §§ 316.194(3)(a), 705.103 and 715.05, Fla. Stat. (1987). The City further codified
such a requirement in its city ordinances pursuant to its general police powers.  Therefore, based
on the provisions of this contract, we find that Alligator Towing is an agency as defined under
section 119.011(2), and these records are subject to public inspection under the Act.").

6

*Cleveland Compania v. Logothetis*, 378 So.2d 1336 (Fla. 2d DCA 1980); and *Church of Scientology of California v. Blackman*, 446 So.2d 190 (Fla. 4th DCA 1984).

Here, the tow was carried out at the direction of SHA's Senior Housing Manager, Ray Cornell and no prior notice or pre-towing hearing was provided to Mr. Burke as required by the Consent Decree[7]. Mr. Burke is the son of resident Patricia Burke, a duly-authorized guest of his mother and a class member whose due process rights were violated by the SHA. In the SHA letter of May 14, 2007 , Mr. Tua admitted that Mr. Cornell did authorize the towing company to have Mr. Burke's vehicle towed in reliance on what he describes as the SHA "Parking Policy" and City of Sanford ordinance LDR Schedule F, § 5.0. See, Ex. 3. Consequently, the SHA had control over the illegitimate decision to remove Plaintiff's vehicle from the SHA's property, ordered Harry's Towing to perform the governmental function of towing the automobile, and became bound by the acts of the towing servicer.

Therefore, as a matter of fact, the inferences and deductions from the conduct of and the relationship between the parties establish beyond cavil that the SHA gave the Harry's Towing the express authority to tow and implied authority to store the vehicle.

    b.    *Principal's liability for issuing an illegitimate order to the agent*

Moreover, the SHA Parking Policy was not in compliance with the Revised SHA Towing Policy adopted under the Consent Decree. In essence, the SHA Parking policy lacked the due process rights instituted by the Consent Decree.

At the same time, one may not properly appoint an agent to commit a criminal or otherwise illegal act, but if the one directed to perform the act does the act directed, the person directing him may be responsible civilly if a tort is committed. See I Restatement

---

[7] See footnote no. 2

7

of Agency § 19, comment a. and Restatement 2d of Agency § 19, comment a; also see *White's Lumber & Supply Co. v. Collins*, 186 Miss. 659, 675 (Miss. 1939) and *United States v. Anderson*, 527 F.2d 442, 444 (5th Cir.-OLD 1976).

In this case, Mr. Tua illegitimately used the SHA Parking Policy to authorize the towing of Plaintiff's vehicle. Mr. Burke had the right of possession of the vehicle and his personal property. Moreover, Mr. Burke went to Harry's Towing to demand the unconditional possession of the vehicle, but was denied. See Ex. 1; also see *Kunde v. Biddle*, 41 Ill. App. 3d 223 (Ill. App. Ct. 1976)[8]. As a result, the SHA had no authority as principal under the law of agency to order the illegal towing and storage of Plaintiff's vehicle. See *United States v. Anderson*, supra.

Consequently, the SHA is responsible civilly to the Plaintiff in tort for illegitimately directing Harry's Towing to take Mr. Burke's vehicle. See *White's Lumber & Supply Co. v. Collins*, supra.

c.    Common Law Negligence

The SHA had a duty to comply with the procedures stated in the Consent Decree for the protection of the Plaintiff against due process violations. The Defendant breached that duty by adopting the SHA Parking Policy. The implementation of the illegitimate SHA Parking Policy, instead of the Consent Decree, was the actual and proximate cause of the Plaintiff's loss of his vehicle and personal property.

---

[8] *Kunde v. Biddle*, 41 Ill. App. 3d 223 (Ill. App. Ct. 1976) (No state statute or local ordinance existed that would have created a lien in favor of the towing company. On the other hand, the owners had proven their conversion cases in that they proved that: (1) the tow company had exerted unauthorized control of the vehicles; (2) the owners were the rightful possessors of the vehicles; (3) the owners were entitled to immediate, unconditional possession of the vehicles and they had demanded but were denied such possession. The court reversed the judgment in favor of the towing company and remanded the cause with directions that a hearing be held on the issue of damages.)

8

As the cause in fact, Mr. Burke would still have his vehicle and personal property,

but for the SHA's failure to follow the notice and pre-towing procedures adopted under

Consent Decree. On legal causation and dependent intervening forces, it is sufficiently

foreseeable that an unauthorized towing will result in the conversion of a vehicle and its

content, because the original illegal order to tow was a substantial factor in causing the

towing company to convert the vehicle and personal property. See *Stanley v. Auto Tow*,

1993 Ohio App. LEXIS 1087 (Ohio Ct. App. 1993)[9]; *Fink v. Gallagher Pipino*, 1997

Ohio App. LEXIS 1480 (Ohio Ct. App. 1997).[10]

For that reason, Plaintiff requests compensation from the SHA for both his

vehicle and personal property. See *Miles v. Naval Aviation Museum Foundation, Inc.*,

289 F.3d 715, 722 (11th Cir. 2002); and *Marzullo v. Crosman Corp.*, 289 F.Supp.2d 1337

(M.D. Fla. 2003).

## II. SHA's Statutory Negligence

Second of all, and contrary to the Defendant's argument, Harry's Towing

unlawful refusal to release Mr. Burke's personal property from his vehicle did not

---

[9] *Stanley v. Auto Tow*, 1993 Ohio App. LEXIS 1087 (Ohio Ct. App. 1993) (The vehicle owner's truck was towed by the towing company from an apartment complex in which the vehicle owner was a tenant. The vehicle owner sued for conversion and trespass to chattel after the towing company refused to return the vehicle. The trial court granted the vehicle owner's claims. The court affirmed on appeal, holding that the towing company and the lot owner had not complied with the proper law under Ohio Rev. Code § 4513.60(E) and § 4513.60(B)(2). Thus, the court held that the towing was improper and that the towing company along with the lot owner owed the vehicle owner damages for the conversion of his goods.)

[10] *Fink v. Gallagher Pipino*, 1997 Ohio App. LEXIS 1480 (Ohio Ct. App. 1997) (The car owner successfully asserted that the company had wrongfully caused his vehicle to be towed from a mall parking lot. As a result, the car owner claimed he had to cancel a trip. The trial court did not abuse its discretion in determining that the car owner's loss of a hotel room deposit and inconvenience, which were compensable special damages, were not reasonably foreseeable consequences of the company's decision to tow the vehicle. The towing bill was a compensable damage because it was sufficiently foreseeable and proximately related to the company's act.)

9

discharge the SHA from liability.

On one hand, Harry's Towing had a duty to release Mr. Burke's personal property from the towed vehicle under Fla. Stat. §713.78(10).

On the other hand, and regardless of an agency relationship, Harry's Towing was instructed by the SHA to remove the vehicle from the complex in violation of the SHA's Towing Policy adopted under the Consent Decree.

In that sense, the SHA had no authority to have the vehicle towed, and thereafter, became statutorily liable for any damages resulting from the storage of the vehicle under Fla. Stat. § 713.78(5)(c).[11]  See *Barcena v. Dep't of Off-Street Parking of Miami*, 492 F. Supp. 2d 1343 (D. Fla. 2007), at 41 ("Fla. Stat. § 713.78(5)(c) allows a prevailing party to recover damages, all costs and fees incurred in prosecuting the tort action".); also see *Murrell v. Trio Towing Service, Inc.*, 294 So. 2d 331 (Fla. 3rd DCA 1974).[12]

Therefore, the SHA's negligent act of ordering the towing of the Plaintiff's vehicle without proper authority under the Consent Decree is a breach of the Defendant's statutory duty under Fla. Stat. § 713.78(5)(c), and makes the opposing Party liable for all damages suffered by Mr. Burke - including the loss of his personal property.

III.     Conversion/Trespass to Chattel

The SHA is also liable for converting Mr. Burke's vehicle and personal property.

---

[11] " ...(c) Upon determining the respective rights of the parties, the court may award damages, attorney's fees, and costs in favor of the prevailing party. In any event, the final order shall provide for immediate payment in full of recovery, towing, and storage fees by the vehicle or vessel owner or lienholder; or the agency ordering the tow; or the owner, lessee, or agent thereof of the property from which the vehicle or vessel was removed." Fla. Stat. § 715.07 (4)

[12] *Murrell v. Trio Towing Service, Inc.*, 294 So. 2d 331 (Fla. 3rd DCA 1974) (The final judgment granted in favor of defendant apartment owners was affirmed because it was conceded that they had the authority to tow plaintiff's car when it parked in an unmarked parking area. However, the final judgment granted in favor of defendant towing company and its president was reversed and remanded because they were liable for the conversion of plaintiff's vehicle.)

An act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion, for which there has always been a remedy. See *Star Fruit Co. v. Eagle Lake Growers*, 160 Fla. 130, 33 So.2d 858 (1948); *Fogade v. ENB Revocable Trust*, 263 F. 3d 1274, 1291 (11th Cir. 2001); and *Seibel v. Society Lease, Inc.*, 969 F. Supp. 713, 718 (M.D. Fla. 1997).

A government agency may be liable for conversion based on their wrongful seizure of an individual's personal property. *See Springer v. Florida Department of Natural Resources*, 485 So.2d 15 (Fla. 3d DCA), *review denied*, 492 So.2d 1331 (Fla. 1986). Also see *E.J. Strickland Constr., Inc. v. Department of Agriculture & Consumer Services*, 515 So. 2d 1331, 1333 (Fla. 5th DCA 1987).

In this case, the SHA wrongfully exercised its authority under the Consent Decree by ordering the towing and storage of Plaintiff's vehicle and personal property in derogation of his possessory rights. Thus, it is clear that the Defendants are liable for the conversion of the Plaintiff's vehicle and personal property.

## CONCLUSIONS AND RECOMMENDATIONS

In conclusion, the Plaintiff requests for this Honorable Court to find that the SHA negligently and wrongfully issued an order to tow Mr. Burke's vehicle without proper authorization under the Consent Decree. Thereafter, relief is sought for compensation of both the vehicle and its contents, supported by claims of: (I) common law negligence; (II) statutory negligence; and (III) the common law conversion/trespass to chattel.[13]

WHEREFORE, Plaintiff/Intervenor Michael Burke respectfully prays that summary judgment be entered in his favor.

---

[13] *Sweeney v. Bruckner Plaza Assocs.*, LP,  supra.

This 21st day of December, 2007.

Respectfully submitted,

Treena Kaye, Trial Counsel

/s/ Roberto Cruz
by ROBERTO CRUZ, Trial Co-Counsel
Florida Bar # 18436
Attorneys for Plaintiffs/Intervenors
Legal Advocacy Center of Central Florida, Inc.
315-A Magnolia Avenue
Sanford, Florida 32771
407-708-1020 – Phone
407-708-1024 - Facsimile
robertoc@laccf.org

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2007, I electronically filed the foregoing
with the Clerk of the Court by using the CM/ECF system to the following:

Cheryl Lister, Esquire
clister@saxongilmore.com

J. Frazier Carraway, Esquire
fcarraway@saxongilmore.com

Michael G. Snytkin, Esquire
msnytkin@saxongilmore.com

Treena Kaye, Esquire
treenak@laccf.org

I further certify that I furnished the foregoing document and notice of electronic
filing by facsimile @ **813-314-4555** and first-class mail to the following non-CM/ECF
participant:

**Ricardo Gilmore, Esquire**
Saxon, Gilmore, Carraway, Gibbons, Lash & Wilcox, P.A.
201 E. Kennedy Blvd., Ste. 600
Tampa, Florida 33602.

/s/ Roberto Cruz
ROBERTO CRUZ, Trial Co-Counsel.
Attorney for Plaintiffs/Intervenors