**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**RHONDA FLAGLER, et al.,**

    **Plaintiffs,**

v.                                        **CIVIL CASE NO.:  90-878-orl-19**

**THE HOUSING AUTHORITY OF THE**
**CITY OF SANFORD, FLORIDA, et al.,**

    **Defendants.**
_____/

**DEFENDANT, SANFORD HOUSING AUTHORITY'S, CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT AND COMBINED MEMORANDUM OF LAW IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFF, MICHAEL A. BURKE'S, MOTION FOR SUMMARY JUDGMENT**

    Defendant, Sanford Housing Authority, (hereinafter referred to as "SHA" or "Housing Authority"), by and through its undersigned counsel and pursuant to this Court's Scheduling Order entered on November 29, 2007, and pursuant to Rule 56, Fed.R.Civ.P., hereby moves for partial summary judgment[1] on an individual claim against it by Plaintiff, Michael A. Burke (hereinafter referred to as "Mr. Burke" or "Plaintiff"), for out-of-pocket loss as a result of towing of Burke's automobile by Harry's Towing Services, Inc. (hereinafter referred to as "Harry's") from SHA property.

    Since SHA does not contest Mr. Burke's entitlement to recover the value of Mr. Burke's vehicle and SHA has previously paid all towing and storage charges to Harry's resulting from the towing of Mr. Burke's vehicle, the sole remaining issue is whether Mr. Burke has any viable claim to recover damages related to the loss of personal property he

---

[1] SHA does not contest $650.00, the value of Mr. Burke's vehicle.

claims was located in his vehicle. For the reasons set forth below, Mr. Burke has no legal right to recover such damages from SHA and SHA is entitled to judgment in its favor on this issue. As grounds for this motion, SHA asserts that there are no genuine disputes as to any material issues of fact, and it is entitled to a judgment against Mr. Burke on the remaining issues as a matter of law. SHA further asserts that: 1) summary judgment is warranted because Harry's was not SHA's agent but an independent contractor and SHA is not liable for the criminal or tortious acts of Harry's or its personnel; and 2) summary judgment is further warranted because Harry's criminal or tortious acts were intervening, superseding and unforeseeable by SHA. In support of this motion, SHA states as follows:

## I. UNDISPUTED FACTS

1. The underlying action was originally filed in 1990 as a class action lawsuit by SHA residents and guests whose automobiles had been towed from Housing Authority property.

2. The lawsuit culminated in the entry of an agreed Consent Decree, which established a detailed Towing Policy to which SHA was to adhere and a final judgment for damages to the individually named Plaintiffs. *See* Consent Decree dated February 2, 1992, attached hereto as Exhibit A.

3. After the Consent Decree was entered in 1992, SHA, for unrelated reasons, experienced more than a decade of administrative turmoil, characterized by constant personnel turnover, and institutional knowledge of the Consent Decree was lost somewhere amid all of the administrative turnovers. It was not until a letter from Mr. Burke's counsel, dated June 7, 2007, requesting information regarding the towing of Mr. Burke's car, wherein

opposing counsel advised SHA of its position, that the Consent Decree was rediscovered.[2] *See* Affidavit by Angel Tua, Executive Director for SHA, dated December 27, 2007, at ¶ 4, attached hereto as Exhibit B.

4.     On August 15, 2007, Mr. Burke filed motions to reopen the case and intervene as a class member, alleging that his car was towed in violation of the 1992 Consent Decree. *See* Plaintiffs'/Intervenors' Motions to Reopen and Intervene and Supporting Memoranda of Law dated August 15, 2007, attached hereto as Composite Exhibit C.

5.     SHA did not contest the motion to reopen the case and intervene.

6.     Mr. Burke is a son of a SHA resident Patricia Burke, who resides at 49 William Clark Court, Sanford, Florida 32771. *See* Affidavit of Michael Burke dated August 3, 2007, at ¶ 2, attached hereto as Exhibit D.

7.     Mr. Burke purchased a 1985 Oldsmobile in March, 2006, for $650.00. *See* Exhibit D at ¶ 5.

8.     At some time prior to March 6, 2007, Mr. Burke parked his 1985 Oldsmobile, which did not bear a license plate, in a SHA residents' parking lot. *See* Affidavit by Ray Cornell, Senior Housing Manager for SHA, dated December 27, 2007, at ¶ 3, attached hereto as Exhibit E.

---

[2] To further complicate matters, SHA was investigated by the FBI in March, 2001. At that time, computer hard drives, boxes of papers and many tenant files were removed. Although some of the files were subsequently returned, those files were in such disarray that it has proven impossible to reconstruct them in any meaningful fashion. It is possible that the Consent Decree and the records relating to the underlying litigation were among the items that were confiscated, but there is no way to tell for certain. The bottom line is that, until June of this year, the current administration was not aware of the Consent Decree and has been unable to locate any records relating thereto.

9. After observing the unlicensed vehicle in a residents' parking lot, SHA's Senior Housing Manager, Mr. Ray Cornell ("Mr. Cornell"), personally contacted surrounding residents to ask if they knew who owned the vehicle. *See* Exhibit E at ¶ 4. Mr. Cornell was unable to determine who owned the vehicle. *See* Exhibit E at ¶ 5. After a few days, Mr. Burke's Oldsmobile was still on SHA property without a license plate or an identifiable owner. *See* Exhibit E at ¶ 5.

10. SHA Parking Policy then in effect stated in pertinent part: "UNLICENSED VEHICLE: SHA is under no obligation to allow vehicles that are without proper licensure or with expired tags to remain on SHA property. SHA will tow these vehicles without notice, at the owners' expense." *See* SHA Parking Policy attached hereto as Exhibit F; *see* Exhibit E at ¶ 6.

11. On March 6, 2007, Mr. Cornell, who was authorized to contact the towing company and have vehicles towed from SHA's property, called Harry's to remove the unidentified vehicle from SHA property pursuant to SHA Parking Policy. *See* Exhibit E at ¶ 6.

12. While there is no written contract between SHA and Harry's, Harry's was the primary towing company used by SHA at the time of the towing of Mr. Burke's vehicle. *See* Exhibit B at ¶ 5.

13. When SHA needed a vehicle towed, a SHA employee called Harry's with a description, license plate (when available) and location of the vehicle. *See* Affidavit by Laquonna Willoford, then assistant housing manager for SHA, dated December 27, 2007, at ¶ 4, attached hereto as Exhibit G.

14. SHA did not know exactly when Harry's would come to tow a vehicle nor did SHA supervise or exercise any control over the towing. *See* Exhibit B at ¶ 7; *see* Exhibit E at ¶ 7; *see* Exhibit G at ¶ 6.

15. Harry's used its own tools, trucks, equipment and employees, furnished its own gasoline and chose its own routes to tow away vehicles from SHA properties. *See* Exhibit B at ¶ 8; *see* Exhibit G at ¶ 6.

16. Furthermore, Harry's did not receive any compensation from SHA for towing vehicles. *See* Exhibit B at ¶ 9.

17. Harry's towed Mr. Burke's vehicle on March 6, 2007. *See* Exhibit E at ¶ 6.

18. Subsequently, Mr. Burke received a Notice of Claim of Lien from Harry's, dated March 20, 2007, saying that he could reclaim the car by paying $125.00 for towing and storage plus $45.00 administrative fee or the car would be sold at public auction at 655 West Fulton Street, Sanford, Florida, at 10:00 a.m., on April 13, 2007. *See* Exhibit D at ¶11.

19. According to Mr. Burke, before April 13, 2007, Mr. Burke went to Harry's, and was told by a female employee that he had to pay $747.80 to get his car back. *See* Exhibit D at ¶12.

20. According to his affidavit, when Mr. Burke asked Harry's employee to return his personal property inside the car, she first telephoned someone and then told Mr. Burke that if he paid $100.00 and signed the title over to Harry's, he could get his belongings out of the car. *See* Exhibit D at ¶13. Apparently, Mr. Burke did not sign his title over. *See* Exhibit E at ¶13.

21.     Under section 713.78(10), Florida Statutes, Harry's had a duty to release Mr. Burke's personal property from the towed vehicle. *See* Section 713.78(10), Florida Statutes, attached hereto as Exhibit H.

22.     Assuming that Mr. Burke's affidavit is true, Harry's actions constituted criminal conduct under Florida law. Any person who violates section 713.78(10), Florida Statutes, is guilty of a felony of the third degree. *See* Exhibit H.

23.     Attached as Exhibit 5 to Mr. Burke's Motion for Summary Judgment dated December 21, 2007, is Harry's Invoice which states that Harry's acquired title to Mr. Burke's vehicle on April 13, 2007, and the vehicle was subsequently "junked" on June 11, 2007. *See* Harry's Towing Service, Inc.'s Invoice dated October 16, 2007, attached hereto as Exhibit I.

## II.     ANALYSIS AND MEMORANDUM OF LAW

In Plaintiff's Motion for Summary Judgment dated December 21, 2007, Mr. Burke argues that SHA is liable to Mr. Burke for the loss of his personal property under the theories of: (1) common law negligence; (2) statutory negligence; and (3) conversion / trespass to chattels. It is SHA's position, as set forth in this Memorandum of Law, that none of Mr. Burke's legal theories can be sustained, and SHA is entitled to judgment as a matter of law.

**1.     SHA is entitled to summary judgment because Harry's was not SHA's agent but an independent contractor and SHA is not liable for Harry's criminal or tortious acts.**

The standard for determining whether one is an agent or an independent contractor is the degree of control exercised by the employer or owner. *See Villazon v. Prudential Health Care Plan, Inc.*, 843 So. 2d 842 (Fla. 2003); *DeBolt v. Dep't of Health and Rehabilitative Serv.*, 427 So. 2d 221, 226 (Fla. 1st DCA 1983). More particularly, it is the right of control

over the manner in which the work is performed, which determines the relationship between the parties. *See Adams v. Dep't of Labor and Employment Sec.*, 458 So. 2d 1161 (Fla. 1st DCA 1984). Where a principal controls only the outcome of the relationship, not the means used to achieve that outcome, the other party is a contractor, not an agent. *See Dorse v. Armstrong World Industries, Inc.*, 513 So. 2d 1265 (Fla. 1987); *Ortega v. General Motors Corp.*, 392 So. 2d 40, 42 (Fla. 4th DCA 1980) ("Where the employee is merely subject to the control or direction of the employer as to the result to be procured, he is an independent contractor; if the employee is subject to the control of the employer as to the means to be used, then he is not an independent contractor.") Moreover, the Middle District Court for the Southern District in *E.E.O.C. v. Dolphin Cruise Line, Inc.*, 945 F. Supp. 1550, 1556 (S.D. Fla. 1996) defined "independent contractor" as a "person who contracts with another to do something for the other, but is not controlled by the other nor subject to the other's right to control with respect to his or her physical conduct in performance of the undertaking, may not be an agent." The following excerpt written by Judge Kanner in *King v. Young*, 107 So. 2d 751, 753 (Fla. 2d DCA 1958), solidifies that notion:

> The status of an independent contractor, as distinguished from that of an agent, consists of a contractual relationship by one with another to perform something for him, but the one so engaged is not controlled or subject to the control of the other in the performance of the engagement but only as to the result. Conversely, a principal in an agency relationship retains the right to control the conduct of an agent in regard to the engagement intrusted to him. It may be said that the recognized distinction between an agent and an independent contractor relationship is determined by whether the person is subject to or whether he is free from control with regard to the details of the engagement.

As can be seen from decisions such as *Stoll v. Noel*, 694 So. 2d 701 (Fla. 1997), independent contractors may indeed become agents, depending on the totality of the

7

circumstances. In *Cantor v. Cochran*, 184 So. 2d 173 (Fla. 1966), the Supreme Court of Florida reaffirmed its adoption of the criteria formulated by Restatement (Second) of Agency section 220 (1958) by examining ten (10) factors to resolve the issue of whether a worker's compensation claimant was an employee or an independent contractor.[3] Applying the factors used by the *Cantor* Court to the instant case indicates a preponderance of evidence in favor of the legal conclusion that Harry's is an independent contractor:

> *"(a) The extent of control which, by the agreement, the master may exercise over the details of the work." Id*. at 174 (emphasis added).

There was no written agreement or contract between the parties. *See* Exhibit B at ¶ 5. When SHA needed a vehicle towed, an SHA employee called Harry's with a description, license plate (when available) and location of the vehicle. *See* Exhibit G at ¶ 4. Harry's worked on its own schedule and SHA did not supervise the towing nor exercise control over the means by which Harry's performed its services. *See* Exhibit B at ¶ 7; *see* Exhibit E at ¶ 7; *see* Exhibit G at ¶ 6. Harry's was subject to SHA control as to its work results only, i.e., to tow the vehicle. *See* Exhibit B at ¶ 10. As a general rule, if a person is subject to the control or direction of another as to his results only, he is an independent contractor; if he is subject to control as to the means used, he is an employee. *See Collins v. Federated Mut. Implement & Hardware Ins. Co.*, 247 So. 2d 461 (Fla. 4th DCA), *cert. denied,* 249 So. 2d 689 (Fla. 1971).

---

[3] In *Cantor*, the Court reached the conclusion that "compensation claimant who was assisting wholesale grocery customers was required to report for work regularly, that dollies for carrying the groceries were supplied by the owners, that claimant had worked at the store for some seven years and that his compensation consisted of gratuities from the customers supported conclusion that claimant was an employee and not an independent contractor." *Id*. *But see D.O. Creasman Electronics, Inc. v. State Dept. of Labor and Employment Sec.*, 458 So. 2d 894 (Fla. 2d DCA 1984), where the Second District Court applying the ten (10) factors held that the cable splicers were independent contractors rather than employees for purposes of Unemployment Compensation Law.

"*(b) whether or not the one employed is engaged in a distinct occupation or business.*"  *Id.* (emphasis added).

Harry's is engaged in providing towing services, a distinct occupation or business.

"*(c) The kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision.*"  *Id.* (emphasis added).

Harry's is a skilled specialist whose work was performed without any supervision by SHA.  *See* Exhibit B at ¶ 7; *see* Exhibit E at ¶ 7; *see* Exhibit G at ¶ 6.

"*(d) The skill required in the particular occupation.*"  *Id.* at 175 (emphasis added).

There is nothing in the record to establish the degree of skill required to perform this work, but it is also clear that it is not the type of work performed by SHA.

"*(e) Whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work.*"  *Id.* (emphasis added).

Harry's used its own tools, trucks, equipment and employees, furnished its own gasoline and chose its own routes to tow vehicles from SHA property.  *See* Exhibit B at ¶ 8. *See Sarasota County Chamber of Commerce v. State, Dept. of Labor and Employment Sec., Div. of Unemployment Comp.*, 463 So. 2d 461, 462 (Fla. 2d DCA 1985) (salespersons for Sarasota County Chamber of Commerce who set their own schedules, were not monitored, furnished and paid for their own transportation, dressed in whatever fashion they desired, were free to hire others at their own expense, worked for other organizations, and were measured only by the results they accomplish, were independent contractors); *A Nu Transfer, Inc. v. Dep't of Labor & Employment Security,* 427 So. 2d 305 (Fla. 3d DCA 1983) (owner-operators who drove their trucks on their own time and at their own expense under contracts terminable at will with an inland carrier for the shipment of freight held to be independent

contractors); *King*, 107 So. 2d 751 (Fla. 2d DCA 1958) (where transportation broker, for a commission, arranged with truck owners for hauling of produce from one point to a particular destination at a fixed sum, and truck owners had choice of routes and furnished own gasoline and oil, there was no agency relationship between truck owners and driver and broker, and hence broker was not liable for negligence of truck driver.)

"*(f) The length of time for which the person is employed.*" *Id.* (emphasis added).

The jobs were performed on as needed basis and were usually performed by Harry's on the day of the request. *See* Exhibit B at ¶¶ 7, 10; *see* Exhibit G at ¶ 5.

"*(g) The method of payment, whether by time or by the job.*" *Id.* (emphasis added).

SHA did not compensate Harry's for the work performed. *See* Exhibit B at ¶ 9.

"*(h) Whether or not the work is a part of the regular business of the employer.*" *Id.* (emphasis added).

The services performed were outside the sphere of SHA's regular business. SHA is a public body whose purpose is to provide safe, sanitary, and affordable housing to the low income population of the City of Sanford and Seminole County through rental of dwellings owned by the Authority and through Section 8 Housing. SHA is not in the business of towing vehicles.

"*(i) Whether or not the parties believe they are creating the relation of master and servant.*" *Id.* (emphasis added).

There was no such belief; SHA had no contract with Harry's and could have used anyone else to tow vehicles from SHA property. *See* Exhibit B at ¶ 5. SHA called Harry's only when it needed to tow vehicles from its property. *See* Exhibit B at ¶ 10; *see* Exhibit E at

¶ 7.  Moreover, SHA did not compensate Harry's, did not provide its insurance, or obtain its occupational licenses, or supervise or direct Harry's work.  *See* Exhibit B at ¶¶ 7, 8, 9.

"*(j) Whether the principal is or is not in business.*"  *Id.* (emphasis added).

The relevance of this factor is obscure, but for what it is worth, SHA is in business. Accordingly, measured against the Restatement criteria as adopted by the *Cantor* Court, Harry's is an independent contractor.

Finally, as a general rule, an owner or employer will not be held liable for acts of an independent contractor, except where activity is inherently dangerous, owner/employer has contractually assumed responsibility, there is statutory liability, owner/employer knew or had reason to know that independent contractor would not perform in a satisfactory manner, or where the independent contractor had apparent authority to act on behalf of the owner/employer.  *See Webb v. Priest*, 413 So. 2d 43, 47 n.2 (Fla. 3d DCA 1982).  Towings performed by Harry's were not inherently dangerous and SHA did not have any problems with Harry's before.  *See* Exhibit G at ¶ 7.  There is no contractual or statutory basis[4] to hold

---

[4]  In its Motion for Summary Judgment dated December 21, 2007, Plaintiff / Intervenor argued that SHA is liable to Mr. Burke under the theory of statutory negligence.  This argument is misplaced.  Plaintiff cites to section 713.78(5)(c), Florida Statutes, which states:

> Upon determining the respective rights of the parties, the court may award damages, attorney's fees, and costs in favor of the prevailing party.  In any event, the final order shall provide for immediate payment in full of recovery, towing, and storage fees by the vehicle or vessel owner or lienholder; or the agency ordering the tow; or the owner, lessee, or agent thereof of the property from which the vehicle or vessel was removed.

Plaintiff haphazardly assumes that this language makes SHA liable for all damages suffered by Mr. Burke, including his personal property.  There is nothing in this statute or case law that allows for recovery of damages related to personal property based on this subsection.  This subsection is simply part of 713.78(5), Florida Statutes, which establishes a right to bring a county court action within ten (10) days and to have the county court determine whether the vehicle was wrongfully removed.  Mr. Burke did not employ this process, so this subsection is simply inapplicable.  Further, this statute establishes no statutory duty to take or refrain from taking any action, and thus, cannot serve a negligence claim.

SHA liable for Harry's acts. *See* Exhibit B at ¶ 5; *see* Exhibit H. SHA was unaware of any instances prior to the towing of Mr. Burke's vehicle where Harry's did not comply with Florida law regarding personal property in a towed vehicle.[5] *See* Exhibit B at ¶ 11.

Finally, Harry's had no apparent authority to act in a criminal or tortious manner on behalf of SHA. "Apparent authority," as described in *Roessler v. Novak*, 858 So. 2d 1158, 1161 (Fla. 2d DCA 2003), is "authority which a principal knowingly tolerates or permits, or which the principal by its actions or words holds the agent out as possessing." Apparent authority arises under Florida law only when the principal creates the appearance of an agency relationship. *See Lensa Corp. v. Poinciana Gardens Ass'n,* 765 So. 2d 296 (Fla. 4th DCA 2000). SHA did not create apparent authority over Harry's criminal or tortious conduct.

Harry's was an independent contractor and SHA should not be held responsible for Harry's criminal or tortious acts, which, therefore, mandates dismissal of Mr. Burke's claim against SHA for recovery of damages related to his personal property.

---

Moreover, SHA has previously paid all towing and storage charges to Harry's resulting from the towing of Mr. Burke's vehicle. There is, however, as properly stated by Plaintiff, subsection ten (10), which places on towing companies a duty to release personal property from the towed vehicle. *See also* 1990 Fla. Op. Att'y. Gen. 11 (1990) (a storage or towing company is required to use reasonable care in performing storage or towing services; there is no statutory authority which allows a storage or towing company to hold personal property contained in a vehicle until payment is received for the storage or towing of the vehicle.) Therefore, contrary to Plaintiff's assertion, this statute does not place a statutory duty on anyone other than the towing company involved and, accordingly, this subsection cannot serve as a basis for finding a statutory duty on the part of SHA concerning Mr. Burke's personal property. Harry's violated subsection ten (10) of the statute by wrongfully failing to release Mr. Burke's personal property. *See infra*, pp. 14-15. As it stands, the statute may give Mr. Burke a cause of action against Harry's, but not against SHA.

[5] Harry's violation of section 713.78(10), Florida Statutes, is discussed in greater detail *infra*, pp. 14-15.

> 2.  **SHA is entitled to summary judgment because Harry's criminal or tortious acts were intervening, superseding and unforeseeable by SHA.**

Florida courts have generally held that a person who has been negligent is not liable for the damages suffered by another when some separate force or action is "the active and efficient intervening cause." *See National Airlines, Inc. v. Edwards*, 336 So. 2d 545, 547 (Fla. 1976); *Kwoka v. Campbell*, 296 So. 2d 629 (Fla. 3d DCA 1974) *cert. denied*, 304 So. 2d 450 (Fla. 1974); *Atlantic Coast Line R. Co. v. Ponds*, 156 So. 2d 781, 784 (Fla. 2d DCA 1963) (the "sole proximate cause"); *Tuz v. Burmeister*, 254 So. 2d 569 (Fla. 1st DCA 1971) (an "independent" cause). Moreover, Florida courts have long followed Restatement (Second) of Torts and its standards. *See for example Barnes v. Gulf Power Co.*, 517 So. 2d 717 (Fla. 1st DCA 1987); *Carlisle v. Ulysses Line Ltd., S.A.*, 475 So. 2d 248 (Fla. 3d DCA 1985). Restatement (Second) of Torts section 448 states:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

*Restatement (Second) of Torts* § 448 (1965). The rule stated in this Section

> [a]pplies when the actor's conduct creates a situation which is utilized by a third person to inflict intentional harm upon another or provides a temptation to do so to which the third person yields, but the actor has no reason to expect that the third person would so act. Under the rule stated in this Section, the actor is not responsible for the harm thus inflicted merely because the situation which his negligence has created has afforded an opportunity or temptation for its infliction.

*Id.*, cmt. a.

Determination of whether a third party's intervening act is also a superseding cause, so as to negate proximate causation on part of a primary tortfeasor, is governed by traditional tort rules. The following considerations are of importance when determining whether an intervening force is a superseding cause of harm to another:

> (a) the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;
> (b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;
> (c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;
> (d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;
> (e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;
> (f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

*Restatement (Second) of Torts* § 442 (1965).

In the instant case, the aftermath of SHA's violation of the Consent Decree brought about harm that was radically different than that which would otherwise result. While the vehicle may have been wrongfully towed in violation of the provisions of the Consent Decree, the impending consequences and damages claimed by Mr. Burke are extraordinary consequences in view of the circumstances existing at the time of the tow because they were unforeseeable by SHA. Harry's operated independently of the situation created by SHA and contrary to Florida Statute regulating towing companies, by failing to release Mr. Burke's personal property from the vehicle in violation of Florida law. Section 713.78(10), Florida

Statutes, "Liens for recovering, towing, or storing vehicles and vessels," states in pertinent part:

> Persons who provide services pursuant to this section shall permit vehicle or vessel owners or their agents … to inspect the towed vehicle or vessel and shall release to the owner or agent the vehicle, vessel, or all personal property not affixed to the vehicle or vessel which was in the vehicle or vessel at the time the vehicle or vessel came into the custody of the person providing such services.

*Fla. Stat.* 713.78(10) (2006); *see* Exhibit H.  Harry's wrongful acts in refusing to return Mr. Burke's property upon request constituted a felony of the third degree.  *See* Exhibit H.  Section 713.78, Florida Statutes, provided Harry's with constructive knowledge of the rules and regulations that govern the towing industry, which Harry's violated.  Consequently, Harry's criminal acts set the intervening force in motion, which resulted in the loss of Mr. Burke's vehicle and his personal property inside the vehicle, a lawsuit against SHA, and thereby broke the chain of causation.[6]  *See Mozer v. Semenza*, 177 So. 2d 880 (Fla. 3d DCA 1965) ("willful, malicious, or criminal act as a general rule breaks the chain of causation.")

Moreover, Harry's intervening acts further constituted a superseding cause of harm to Mr. Burke because SHA had no way of knowing that Harry's might so act, the acts by Harry's were highly extraordinary, and not a normal consequence of SHA's actions.[7]  In all

---

[6] In its Motion for Summary Judgment dated December 21, 2007, Plaintiff / Intervenor argued that SHA is liable to Mr. Burke under the theory of common law negligence.  This argument is misplaced.  Under the theory of common law negligence, the four (4) elements of negligence are: (1) a legal duty owed by defendant to plaintiff; (2) breach of that duty by defendant; (3) injury to plaintiff legally caused by defendant's breach; and (4) damages as a result of the injury.  *See generally Paterson v. Deeb,* 472 So. 2d 1210, 1214 (Fla. 1st DCA 1985).  Plaintiff's argument does not take into account that even if the first, second, and fourth elements are proven, the third element is missing as it was the intervening, superseding, and unforeseeable criminal act by Harry's that caused Mr. Burke's "injury" and broke the chain of causation.

15

its dealings with Harry's, SHA was unaware of any instances where Harry's did not comply with Florida law regarding personal property inside a towed vehicle. *See* Exhibit B at ¶ 11. Consequently, the illegal, intervening acts by Harry's preclude SHA's violation of the Consent Decree from being the proximate cause of any injury alleged by Mr. Burke, were unforeseeable, and insulate SHA from liability.[8] *See Russo v. Baxter Healthcare Corp.*, 140

---

[7] This follows from Restatement (Second) of Torts section 447 which states:
> The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if
> > (a) the actor at the time of his negligent conduct should have realized that a third person might so act, or
> > (b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or
> > (c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.

*Restatement (Second) of Torts* § 447 (1965).

[8] In its Motion for Summary Judgment dated December 21, 2007, Plaintiff / Intervenor argued that SHA is liable to Mr. Burke under the doctrine of conversion / trespass to chattels. This argument is misplaced. Plaintiff cannot prove the elements to satisfy either of these intentional torts. Restatement (Second) of Torts section 217 defines trespass to chattels as "(a) intentionally dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." *Restatement (Second) of Torts* § 217 (1965).

Restatement (Second) of Torts section 222A defines conversion as "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Restatement (Second) of Torts* § 222A (1965).

> In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important: (a) the extent and duration of the actor's exercise of dominion or control; (b) the actor's intent to assert a right in fact inconsistent with the other's right of control; (c) the actor's good faith; (d) the extent and duration of the resulting interference with the other's right of control; (e) the harm done to the chattel; (f) the inconvenience and expense caused to the other.

Id. In addition, Restatement (Second) of Torts section 224 states: "One who does not intentionally exercise dominion or control over a chattel is not liable for a conversion even though his act or omission is negligent." *Restatement (Second) of Torts* § 222A (1965). Plaintiff cannot demonstrate that SHA intentionally dispossessed Mr. Burke of his personal property. Any such outcome was a direct consequence of intervening, superseding, criminal acts by Harry's. As argued in this Memorandum of Law, Harry's was not the agent of SHA, and SHA is accordingly not responsible for Harry's actions. In addition, SHA cannot be held liable for the intentional torts or criminal acts committed by a third party. Mr. Burke is not left without a remedy, but that remedy is against Harry's and not SHA.

F. 3d 6, 11 (1st Cir. 1998) (intervening forces insulate a party from liability only if they are not foreseeable consequences of that party's original negligence or, in other words, if they are not "a natural and probable consequence of the initial tortfeasor's act"), *citing Walsh v. Israel Couture Post, No. 2274 V.F.W.*, 542 A. 2d 1094, 1097 (R.I. 1988); *see also Werndli v. Greyhound Corp.*, 365 So. 2d 177 (Fla. 2d DCA 1978).

As a result, Harry's illegal, intervening, unforeseeable acts constituted a superseding cause, broke the chain of causation, and therefore mandate dismissal of Mr. Burke's claim against SHA for the value of his personal property.

**WHEREFORE,** Defendant, Sanford Housing Authority, asks this Court for summary judgment in favor of SHA and against Mr. Burke and to grant it any such relief as this Court deems appropriate.

Respectfully Submitted,

 /s/ J. Frazier Carraway
**J. FRAZIER CARRAWAY, ESQ.**
Florida Bar #0764541
**MICHAEL G. SNYTKIN, ESQ.**
Florida Bar #0021283
**SAXON, GILMORE, CARRAWAY GIBBONS LASH & WILCOX, P.A.**
Fifth Third Center
201 East Kennedy Blvd., Suite 600
Tampa, FL 33602
813.314.4500 (Phone)
813.314.4555 (Facsimile)
E-Mail: fcarraway@saxongilmore.com
E-Mail: msnytkin@saxongilmore.com
Counsel for Defendant,
Sanford Housing Authority

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of December, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Treena A. Kaye and Roberto Cruz, Legal Advocacy Center of Central Florida, Inc., 315-A Magnolia Avenue, Sanford, Florida 32771.

/s/ J. Frazier Carraway
ATTORNEY

e:\sha\michael burke\msj burke 12-28-07.doc