**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**RHONDA FLAGLER, et al.,**

     **Plaintiffs,**

**-vs-**               **Case No.  6:90-cv-878-Orl-19**

**THE HOUSING AUTHORITY OF**
**THE CITY OF SANFORD, FLORIDA, et al.,**

     **Defendants.**

_____

**ORDER**

This case comes before the Court on the following:

1.   Motion of Plaintiff Michael A. Burke for Summary Judgment and Supporting Memorandum of Law (Doc. No. 63, filed Dec. 21, 2007);

2.   Cross Motion of Defendant, Sanford Housing Authority, for Partial Summary Judgment and Combined Memorandum of Law in Support Thereof and in Opposition to the Motion of Plaintiff, Michael A. Burke, for Summary Judgment (Doc. No. 64, filed Dec. 28, 2007);

3.   Supplemental Response and Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment (Doc. No. 65, filed Jan. 7, 2008);

4.   Motion of Plaintiff to Strike Defendant's Supplemental Response and Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment (Doc. No. 66, filed Jan. 9, 2008);

5.   Motion of Plaintiff Requesting Leave to File a Reply to Defendant's Supplemental Response and Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment (Doc. No. 67, filed Jan.11, 2008);

6.     Response of Defendant in Opposition to Plaintiff's Motion to Strike Defendant's Supplemental Response and Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment (Doc. No. 68, filed Jan. 14, 2008); and

7.     Response of Defendant in Opposition to Plaintiff's Motion Requesting Leave to File a Reply to Defendant's Supplemental Response and Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment (Doc. No. 69, filed Jan. 17, 2008).

## Background

The series of motions before the Court arise from the Housing Authority of the City of Sanford's ("SHA") violation of a consent decree.  This action was originally filed in 1990 as a class action lawsuit by SHA residents and guests whose automobiles had been towed without notice or the opportunity for a hearing.  (Doc. No. 1, filed Nov. 28, 1990.)  The lawsuit ended in 1992 with a consent decree requiring SHA to adhere to a detailed towing policy.  (Doc. No. 41, filed Feb. 3, 1992.)

In August of 2007, Plaintiffs Lateric Lahenry Dixon, Michael A. Burke, and Castalavet Turner sought to reopen the case and intervene as class members, alleging that their cars were towed in violation of the 1992 consent decree.  (Doc. Nos. 43, 44 filed Aug. 15, 2007; Doc. No. 50, filed Sept. 5, 2007.)  Dixon and Burke also filed a motion to require SHA to show cause why it should not be held in contempt for violating the 1992 consent decree.  (Doc. No. 45, filed Aug. 15, 2007.)  Dixon and Burke asked the Court to sanction SHA and grant supplemental relief to the SHA residents and guests whose cars were towed in violation of the consent decree.  (*Id.* at 9.)

SHA did not contest Plaintiffs' motions to reopen the case and intervene, and it later reached an agreement with Plaintiffs to compensate any class member whose automobile was unlawfully

towed.  (Doc. No. 52, filed Nov. 14, 2007, at 4.)  Despite the accord, however, the parties disagreed as to the extent SHA would be liable for class members' out-of-pocket losses.  (*Id.* at 4-5.) Specifically, SHA took the position that it was not responsible for the loss of personal property inside the cars at the time of the tows.  (*Id.* at 5.)

This disagreement has particular relevance for class member Michael Burke.[1]  In early March of 2007, Burke parked his car on the SHA property while visiting with his mother, a SHA resident. (Doc. No. 63-2, filed Dec. 21, 2007 at 1.)  He happened to be in the process of moving from his girlfriend's apartment and was storing many of his personal possessions inside his car.  (*Id.*)   In addition, Burke works as a DJ and kept over $15,000 worth of CDs and equipment in the car.  (*Id.* at 2.)  In total, Burke claims that his car contained $23,590.00 of personal property.  (*Id.*)

Burke parked his car in the residents' parking lot, which prompted the Senior Housing Manager, Ray Cornell, to investigate.  (Doc. No. 64-6 at ¶ 4.)   After unsuccessfully attempting to find the vehicle's owner, Cornell contacted Harry's Towing and requested that it remove the car. (*Id.* at ¶¶ 5-6.)  Cornell was authorized by the SHA to have cars towed from the parking lot.  (Doc. No. 64 at 4.)

There is no written contract between SHA and Harry's Towing, but SHA identifies Harry's Towing as the primary towing company used by SHA during this time.   (*Id.* at 4; Doc. No. 64-3 at ¶ 5.)  SHA did not know exactly when Harry's Towing would come to tow and, according to the affidavit of a SHA employee, did not supervise or exercise any control over the towing.  (*See* Doc. No. 64-3 at ¶ 7; Doc. No 64-6 at ¶ 7; Doc. No. 64-8 at ¶ 6.)  Harry's Towing provided all of its own

---

[1]      SHA agreed to compensate Mr. Burke for the value of his automobile and the towing invoice.  (Doc. No. 64 at 1 n.1.)  The dispute before the Court only concerns SHA's responsibility to compensate Burke for the value of his personal property.

equipment for the tows and did not receive any compensation from SHA for the towing.  (Doc. No. 64-6 at ¶ 7.)

After Harry's towed the car, it sent Burke a Notice of Claim of Lien dated March 20, 2007, stating that he could reclaim the car if he paid $125.00 for towing and storage plus a $45.00 administrative fee. (Doc. No. 65-5 at ¶ 11.)  According to the notice, failure to pay the amount owed would result in the car being sold at auction on April 13, 2007.  (*Id.*)  Burke then went to Harry's Towing sometime before April 13, 2007 and was told by an employee that he had to pay $747.80 to the get the car back.  (*Id.* at ¶ 12.)  Alternatively, the employee stated, Burke could claim his personal property inside the car if he paid $100.00 and signed the car's title over to Harry's.  (*Id.*)  Burke refused both offers and apparently took no further action.  (*Id.* at ¶ 13.)  Harry's Towing later sent Burke an invoice stating that Harry's acquired title to Burke's car on April 13, 2007 and "junked" it on June 11, 2007.  (Doc. No. 63-6.)

Section 713.78(10) of the Florida Statutes requires towing companies such as Harry's to release the personal property inside a car to its owner, regardless of whether the owner has satisfied the towing company's lien on the car.  Violations of the statute are subject to criminal prosecution and are considered felonies of the third degree.  *Id.* § 713.78(12)(b).

### Standard of Review

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004).  An issue of fact is "material" if, under the applicable substantive law, it

might affect the outcome of the case. *Hickson Corp.*, 357 F.3d at 1259. An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.* at 1260. A court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*; *Anderson*, 477 U.S. at 251-52.

The party moving for summary judgment has the burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment. *Id.* On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

### Analysis

In support of his motion for summary judgment, Plaintiff Burke argues that SHA is liable for the loss of his personal property under three theories: (1) the existence of an agency relationship between SHA and Harry's Towing under Florida law; (2) statutory negligence through the violation of a Florida statute regulating towing and the storage of vehicles; and (3) conversion or trespass to

chattels under Florida law.  (Doc. No. 63 at 5-12.)  SHA moves for summary judgment on the following grounds: (1) Harry's Towing was an independent contractor under Florida agency law; and (2) SHA is not liable for negligence because Harry's criminal or tortious acts broke the chain of causation between SHA's alleged negligence and Burke's injury.  (Doc. No. 64 at 4-18.)

Both parties thoroughly brief these issues, providing extensive citations to case law from various state-level jurisdictions throughout the United States.  However, at most, these discussions of state law are only tangentially relevant to the actual issue before the Court.  Burke has not filed a complaint against SHA alleging violations of Florida law.  Rather, the class members have moved the Court for contempt sanctions and compensatory damages for injured class members based on SHA's admitted violation of a 1992 consent decree.  (Doc. No. 45 at 10-11.)  Because this case is in federal court and arises under federal law, the procedural issue of contempt sanctions is necessarily governed by a federal standard.

### A.      The Availability of Remedial Contempt Sanctions

The district court may impose sanctions in a civil contempt proceeding for "either or both" of two reasons: (1) to coerce the defendant into compliance with the court's order, and (2) to compensate the complainant for losses sustained.  *Local 28, Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 443 (1986); *Tom James Co. v. Morgan*, 141 Fed. Appx. 894, 900 (11th Cir. 2005).  Consistent with the remedial aspect of contempt sanctions, the Supreme Court has explained:

> The absence of wilfulness does not relieve from civil contempt.  Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance.  Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act.

*McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1947) (citations omitted).

When a remedial sanction is imposed, the Court acts to repair the injured party by restoring it to the position the party would have held if the Court's order had been obeyed. *In re Grand Jury Subpoena of June 12, 1986*, 690 F. Supp. 1451, 1453 (D. Md. 1988) (citing *Vuitton et Fils v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979)).  Once the complainant has demonstrated "actual losses" stemming from the contumacious behavior, the Court lacks discretion to withhold an order awarding compensatory damages. *Thompson v. Cleland*, 782 F.2d 719, 722 (7th Cir. 1986); *Parker v. United States*, 153 F.3d 66, 70 (1st Cir. 1946).  In this sense, the remedial sanction is similar to a tort judgment arising from wrongful behavior. *Thompson*, 782 F.2d at 722.

SHA admits violating the 1992 consent decree by having the vehicles of various class members towed, including Burke's vehicle. (Doc. No. 52 at 1.)  Furthermore, Burke has introduced evidence of "actual losses" stemming from SHA's violation.  (Doc. No. 63-2 at 2.)  Thus, remedial contempt sanctions are appropriate in this case.

### B.    Extent of Burke's Damages

SHA argues that it should not be held liable for Burke's personal property under traditional tort law principles because Harry's criminal or tortious acts were "intervening, superseding and unforeseeable by SHA."  (Doc. No. 64 at 13.)  Specifically, SHA contends that it had no way of knowing that Harry's Towing might violate section 713.78(10) of the Florida Statutes by not returning Burke's personal property.  (*Id.* at 13-14.) Both Florida law and the Restatement (Second) of Torts recognize that the intentional torts or criminal actions of a third party may sever an actor's liability for negligence, even when the actor's negligence is a cause in fact of the plaintiff's injuries. *Nat'l Airlines, Inc. v. Edwards*, 336 So. 2d 545, 547 (Fla. 1976); Restatement (Second) of Torts § 448 (1965).  Commentators have argued that considerations of moral responsibility and economic

efficiency provide the rationale behind this and other proximate causation rules.  W. Jonathan Cardi, *Reconstructing Foreseeability*, 46 B.C. L. Rev. 921, 938 (2005) (citing Richard A. Posner, *A Theory of Negligence*, 1 J. Legal Stud. 29, 32-33 (1972)); *see also Stalh v. Metro. Dade County*, 438 So. 2d 14, 20 (Fla. 3d DCA 1983) (citing W. Prosser, Law of Torts § 44 (4th ed. 1971)).

The purpose of remedial contempt sanctions are different.  Litigants violate a court order at their own risk.  *See F.T.C. v. Kuykendall*, 371 F.3d 745, 764-65 (10th Cir. 2004) ("To the extent the large number of consumers affected by the defendants' deceptive trade practices creates a risk of uncertainty, the defendants must bear that risk."); *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265 (1946) ("The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created.").  While the public policy underlying tort law may favor a tradeoff between compensation and reasonable limits on liability, the policy underlying the use of remedial contempt sanctions is skewed in favor of the injured party.  *See McComb*, 336 U.S. at 193.  Accordingly, "the measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief." *Id.*; *Kuykendall*, 371 F.3d at 765.  Proof of a "causal nexus" is required, but the complex rules governing proximate cause in tort do not apply.  *See, e.g., AccuSoft Corp v. Palo*, 237 F.3d 31, 56-57 (1st Cir. 2001) (requiring proof of a causal nexus between a party's breach of its settlement agreement and the injured party's damages); *In re Kave*, 760 F.2d 343, 351 (1st Cir.1985) (explaining that compensatory damages for contempt are intended to "make whole the aggrieved party for damages caused by the contemnor's conduct").

SHA's violation of the contempt decree was a cause in fact of Burke's injury.  It is possible that the actions of Harry's Towing were sufficient to absolve SHA of tort liability for Burke's

personal property under Florida law, but the present issue before the Court is whether SHA should be held liable in the form of contempt sanctions for a loss that stemmed from its violation of the Court's order.  It is undisputed that SHA instructed Harry's Towing to tow Burke's car in violation of the 1992 consent decree, that Harry's then towed the car, and that Harry's later refused to allow Burke to retrieve his personal property.  (Doc. No. 65 at 4-6.)  This chain of events provides a sufficient causal nexus to warrant remedial sanctions against SHA to compensate Burke for the damages caused by SHA's violation of the 1992 consent decree.

Liability having been determined, the parties shall follow the provisions of the Scheduling Order entered in this case at Docket Number 57 on November 29, 2007.

### Conclusion

Based on the foregoing:

1.      The Court **GRANTS** the Motion of Plaintiff Michael A. Burke for Summary Judgment and Supporting Memorandum of Law (Doc. No. 63, filed Dec. 21, 2007).

2.      The Court **DENIES** the Cross Motion of Defendant, Sanford Housing Authority, for Partial Summary Judgment and Combined Memorandum of Law in Support Thereof and in Opposition to the Motion of Plaintiff, Michael A. Burke, for Summary Judgment (Doc. No 64, filed Dec. 28, 2007).

3.      The Court **DENIES** as moot the Motion of Plaintiff to Strike Defendant's Supplemental Response and Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment (Doc. No. 66, filed Jan. 9, 2008).

4.      The Court **DENIES** as moot the Motion of Plaintiff Requesting Leave to File a Reply to

Defendant's Supplemental Response and Memorandum of Law in Opposition to Plaintiff's

Motion for Summary Judgment (Doc. No. 67, filed Jan.11, 2008).

**DONE** and **ORDERED** in Chambers in Orlando, Florida on March 20___, 2008.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record